## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **MELISSA MONTEJANO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **2:21-cv-00244-JDL** |
| | ) | |
| **KELSEY HERRICK,** | ) | |
| **Individually and on behalf** | ) | |
| **of minor children AB and CB** | ) | |
| | ) | |
| **Defendant.** | ) | |

### ORDER ON DEFENDANT'S MOTION TO DISMISS

Melissa Montejano brings this action (ECF No. 1) against Kelsey Herrick asserting a single claim of wrongful use of civil proceedings arising out of a state court lawsuit regarding a dispute between the parties over the proceeds from a life insurance policy. Herrick filed a Motion to Dismiss (ECF No. 4) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of federal jurisdiction under 28 U.S.C.A. § 1332(a) (West 2021). For the reasons that follow, I grant Herrick's Motion to Dismiss.

### I. FACTUAL BACKGROUND

This case stems from a dispute over the distribution of life insurance proceeds from a Federal Employees' Group Life Insurance ("FEGLI") policy maintained by Jody Brooks. *Herrick v. Montejano* (*Herrick I*), No. 2:19-CV-397, 2019 WL 5704930, at *1 (D. Me. Nov. 5, 2019). Brooks was married to Kelsey Herrick from 2006 until 2012. *Herrick v. Montejano* (*Herrick II*), No. BCD-CV-2020-07, 2020 WL 8613450, at *1 (Me. Super. Ct. Dec. 2, 2020). Brooks and Herrick divorced in 2012, and their

divorce decree directed Brooks to maintain a $300,000 life insurance policy and name Herrick as the beneficiary until his child support and spousal support obligations ceased. *Id.* Thereafter, Brooks maintained a policy through his employment at the Portsmouth Naval Shipyard, but he never named a beneficiary. *Id.*

The Federal Employees' Group Life Insurance Act ("FEGLIA") requires FEGLI proceeds to be distributed in accordance with divorce decrees which expressly provide for their distribution, but only if the decree "is received, before the date of the covered employee's death, by the employing agency." 5 U.S.C.A. § 8705(e)(2) (West 2021). FEGLIA also provides that if the employee has been separated from his employment, notice may be provided to the Office of Personnel Management (OPM). *Id.* If there is no designated beneficiary, the proceeds are paid "to the widow or widower of the employee." *Id.* § 8705(a). Upon completion of their divorce, Herrick provided a copy of the divorce decree to the OPM in 2014, prior to Brooks's death; neither she nor Brooks filed a copy with his employer, the Portsmouth Naval Shipyard.

Brooks died on or about January 13, 2019. Herrick thereafter applied for the life insurance proceeds. *Herrick II*, 2020 WL 8613450, at *1. Because the divorce decree had not been provided to Portsmouth Naval Shipyard prior to Brooks's death, the policy administrator refused to pay the proceeds to Herrick and instead paid the proceeds to Montejano, whom Herrick had married in 2013. *Herrick II*, 2020 WL 8613450, at *2. Following the distribution, Herrick and Montejano spoke, and Montejano responded that she planned to "get this mistake fixed," which Herrick interpreted to mean that the two had an agreement that Montejano would transfer the insurance proceeds to her. *Id.*

2

Herrick's attorney informed Montejano's attorney of Herrick's intention to bring a suit to establish her right to the insurance proceeds before her state court complaint was filed, and Montejano responded through counsel that such an action would be barred under the controlling case law from the United States Supreme Court. Herrick then filed her complaint, which asserted an equitable claim for imposition of a constructive trust to prevent unjust enrichment and a claim for breach of contract. Herrick brought suit against Montejano in the Maine Superior Court on or about July 31, 2019 seeking to recover the FEGLI proceeds that had been paid to Montejano.

On February 26, 2021, the Maine Superior Court granted Montejano's motion for summary judgment and entered a judgment in her favor on all counts. *Herrick v. Montejano*, No. BCD-CV-2020-07 (Me. Super. Ct. Feb. 26, 2021). Immediately preceding this holding, the court determined that "according to FEGLIA's order of precedence, the benefits of Mr. Brooks's policy correctly accrued to Ms. Montejano." *Herrick v. Montejano*, No. BCD-CV-2020-07, slip op. at 3 (Me. Super. Ct. Feb. 17, 2021). This determination resolved all of Herrick's claims against Montejano in Montejano's favor. During the eighteen-month course of litigation, Montejano incurred legal expenses of $50,635.97.

## II.  LEGAL ANALYSIS

### 1.    Whether This Court May Exercise Subject Matter Jurisdiction

Herrick contends that Montejano's complaint should be dismissed for lack of subject-matter jurisdiction because the amount in controversy does not meet the required minimum threshold. Herrick argues that although Montejano seeks

damages totaling $300,000, the majority of this sum consists of punitive damages to which Montejano is not entitled.

Federal district courts exercise diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" so long as complete diversity exists between the parties.  28 U.S.C.A. § 1332(a).  The plaintiff seeking to invoke diversity jurisdiction bears the "burden to establish that the minimum amount in controversy has been met."  *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 41 (1st Cir. 2012).  If the plaintiff's claim appears to be made in good faith, then "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  *Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1st Cir. 2004) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

"[W]here both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining [whether the] jurisdictional amount" is satisfied.  *Violette v. Citibank N.A.*, No. 1:20-cv-00477, 2021 WL 1759857, at *4 (D. Me. May 4, 2021) (alteration in original) (quoting *Bell v. Preferred Life Assurance Soc'y of Montgomery, Ala.*, 320 U.S. 238, 240 (1943)).  Maine law allows for punitive damages "based upon tortious conduct only if the defendant acted with malice," which may be satisfied by a showing of express or implied malice.  *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985).  Express malice "exists where the defendant's tortious conduct is motivated by ill will toward the plaintiff."  *Id.* Implied malice can be shown through conduct that "is so outrageous that malice toward a person injured as a result of that conduct can be implied" but cannot be

established by showing the defendant's "mere reckless disregard of the circumstances." *Bratton v. McDonough*, 2014 ME 64 ¶ 25, 91 A.3d 1050, 1058-59 (quoting *Tuttle*, 494 A.2d at 1361).

Montejano seeks $300,000 in damages, comprising legal fees in the amount of $50,635.97, compensatory damages for emotional distress and time and effort expended to defend herself, and punitive damages. Montejano's single-count complaint alleges a claim of wrongful use of civil proceedings and asserts that Herrick acted with express or implied malice. Because Maine law authorizes punitive damages for this cause of action, it is not a legal certainty that Montejano would be unable to obtain a damages award in excess of $75,000. Thus, the amount in controversy requirement is satisfied and the Court's subject-matter jurisdiction is properly invoked. I therefore turn to Herrick's argument that Montejano's complaint should be dismissed for failure to state a claim.

## 2. Whether Montejano Has Plausibly Alleged a Claim of Malicious Prosecution Under Federal Rule of Civil Procedure 12(b)(6)

Herrick contends that, even if this Court has jurisdiction over the claim, Montejano has failed to plausibly state a claim of malicious prosecution under Federal Rule of Civil Procedure 12(b)(6).

In reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). To survive a motion to dismiss, the complaint "must contain

sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011):  First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).  Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Although legal conclusions may "provide the framework of a complaint, they must be supported by factual allegations." *Id.*  The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.*

Maine has adopted the Restatement definition of the tort of wrongful use of civil proceedings, which consists of three elements: (1) initiation of civil proceedings without probable cause; (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based; and (3) termination of the proceedings in favor of the person against whom they were brought. *Pepperell Tr. Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶ 15, 708 A.2d 651, 656 (citing Restatement (Second) of Torts § 674 (Am. L. Inst. 1975)).  Probable cause exists when a person in the plaintiff's position has information that would

6

reasonably allow him to believe that "the party against whom the prosecution is initiated was guilty of the charged offense." *Price v. Patterson*, 606 A.2d 783, 785 (Me. 1992).

Prior to bringing suit against Montejano, Herrick's attorney notified Montejano's attorney that a lawsuit would be filed if Montejano did not compensate Herrick for the life insurance proceeds. Montejano's attorney responded that such a suit would be barred under controlling Supreme Court precedent, and that, if the complaint was filed, Herrick could be liable for Montejano's attorney's fees. Herrick, who was in possession of a divorce decree that had been filed with the OPM and that required Brooks to maintain a $300,000 life insurance policy with her as the beneficiary, maintained that she had a legitimate claim and brought suit. Montejano does not dispute the existence or validity of the divorce decree but instead rests her argument on her attorney's warnings to Herrick's attorney that the suit would fail under controlling federal law.

The facts in *Hillman v. Maretta* are similar, but not identical, to this situation. 569 U.S. 483 (2013). In *Hillman*, the decedent listed his first wife as the beneficiary to his FEGLI policy during their marriage and did not update the policy after the two divorced and he subsequently remarried. 569 U.S. at 488-89. Because he did not change the beneficiary, his former wife received the proceeds from the policy upon his death. *Id.* at 489. The second wife sought the proceeds under Virginia law, which entitled her to her spouse's life insurance policy, and the Supreme Court held that Congress was clear that the designation of a beneficiary preempts state law to the contrary. *Id.* at 489-90. The *Hillman* Court determined that when Congress gave

employees the ability to designate a beneficiary under FEGLIA, it created an "expectation that the insurance proceeds will be paid to the named beneficiary and that the beneficiary can use them." *Id.* at 495. Thus, the Court held that "where a beneficiary has been duly named, the insurance proceeds she is owed under FEGLIA cannot be allocated to another person by operation of state law." *Id.* at 497.

*Ridgway v. Ridgway* is also sufficiently distinguishable to render Herrick's claim plausible. 454 U.S. 46 (1981). *Ridgway* construed a different policy (the Servicemen's Group Life Insurance Act), which had similar beneficiary precedence provisions to FEGLI. 454 U.S. at 52. In *Ridgway*, the decedent designated that proceeds from his life insurance would be paid as specified by law (which, under the governing law, would be to his lawful spouse at the time of his death). *Id.* at 48-49. Although there was a divorce decree requiring him to keep his life insurance policies in force to benefit his children, he had remarried and upon his death the benefits were paid to his widow. *Id.* at 48-50.

In both *Hillman* and *Ridgway*, the Court gave great weight to Congress's emphasis on the importance of following the designation made by the decedent. *Hillman*, 569 U.S. at 494 ("FEGLIA creates a scheme that gives highest priority to an insured's designated beneficiary . . . . FEGLIA's implementing regulations further underscore that the employee's 'right' of designation 'cannot be waived or restricted.'" (quoting 5 C.F.R. § 843.205(e) (2021))); *Ridgway*, 565 U.S. at 55 ("Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other." (quoting *Wissner v. Wissner*, 338 U.S. 655, 658 (1950))).

In contrast to *Hillman* and *Ridgway*, Brooks failed to designate a beneficiary for his life insurance policy.  Herrick possessed a valid divorce decree entitling her to the proceeds.  Her attorney filed the decree with the OPM, although not with Brooks's employer, which was itself a government agency.  At the early stage of litigation, Herrick could have reasonably believed that notice to the OPM was adequate to file the decree according to the statutory requirements.  Additionally, Herrick raised breach of contract claims against Montejano in which she asserted that the two had come to an agreement that Montejano would first assist Herrick in directly obtaining the proceeds, and then, when that failed, that Montejano would compensate Herrick for the proceeds.  In her complaint, Montejano contends that Herrick was not truthful in her original complaint about this agreement, but the earlier pleadings lay out undisputed facts that the two had multiple conversations in which, at a minimum, Montejano was noncommittal about whether she would compensate Herrick and that Montejano had originally assisted Herrick in applying for the life insurance proceeds.

Accordingly, Herrick had probable cause to believe she had a legitimate claim to the FEGLI proceeds warranting judicial resolution that was not barred by the holdings in *Hillman* and *Ridgway*, either because she was entitled to the proceeds through a valid divorce decree or because of her purported verbal agreement with Montejano.  The facts asserted in Montejano's complaint—that her attorney warned Herrick's attorney not to bring the case because of the existence of Supreme Court caselaw relevant to the claim—are not sufficient to state a plausible claim that Herrick's suit was filed without probable cause.  Herrick may have had a weak claim, but it was not unreasonable for her to believe that the distinctions between her case

and the governing Supreme Court case law provided an avenue to a judicial determination that she was entitled to Brooks's life insurance policy. The first element of the tort of wrongful use of civil proceedings, therefore, cannot plausibly be established.

Montejano offers even fewer facts to support the second element of a wrongful use of civil proceedings claim. Rather than allege facts, Montejano's complaint provides a conclusory assertion that Herrick's claim was filed with the improper purpose of pressuring or extorting Montejano to surrender the life insurance proceeds. This case is not one where the "'groundlessness' of the suit was so apparent and palpable that an improper purpose can be inferred from its existence." *Beaulieu v. Bank of Am., N.A.*, No. 1:14-cv-00023, 2014 WL 4843809, at *6 (D. Me. Sept. 29, 2014). Montejano's contention that Herrick's claim was filed for the improper purpose of extortion, without providing any factual allegations, is insufficient to plausibly establish the second element and survive Herrick's motion to dismiss.

On the face of Montejano's complaint, only the third element of the tort of wrongful use of civil proceedings is met here, as Montejano ultimately prevailed in state court. The facts do not plausibly support the first or second elements and, for this reason, Montejano's claim of wrongful use of civil proceedings is properly dismissed.

## III. CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss (ECF No. 4) is **GRANTED** pursuant to Federal Rule of Civil Procedure 12(b)(6). The complaint (ECF No. 1) is hereby **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

**Dated: January 14, 2022.**

/s/ JON D. LEVY
**CHIEF U.S. DISTRICT JUDGE**